# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| ANTHONY MCFARLAND, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 13 C 4576 |
| v. | ) | Magistrate Judge Susan E. Cox |
| TRICAM INDUSTRIES, INC., | ) | |
| Defendant. | ) | |

## ORDER

For the reasons provided, defendant Tricam Industries' Motion *In Limine* to Exclude Certain Testimony of Gary Hutter is denied [78].

## STATEMENT

Anthony McFarland (McFarland) alleges that, on January 12, 2012, while using a step-stool manufactured by Tricam Industries (Tricam), the step-stool became unhinged and fell flat, resulting in injury to his face and neck.[1] McFarland subsequently filed suit against Tricam for product liability.[2] Trial has been set for March 2 - 4, 2015.[3]

Defendant Tricam initially filed eighteen motions *in limine* seeking to exclude certain portions of the testimony of Plaintiff McFarland's expert witness, Gary Hutter.[4] During the pre-trial conference, District Judge Castillo ordered Tricam to condense these various motions into

---

[1] Pl's Compl., dkt. 1, exh. 1.
[2] *Id.*
[3] Minute Entry for the Hon. Susan E. Cox for 11/7/2014, dkt. 100.
[4] Proposed Pre-Trial Order at 12-15, dkt. 73.

1

one motion *in limine* to exclude portions of expert testimony, commonly called a partial *Daubert* motion.[5] Tricam has done so,[6] and that motion is fully denied for the reasons stated below.

I.  **Applicable Legal Standards**

The trial judge has the authority and duty to act as gatekeeper for expert evidence, allowing only that which is both relevant and reliable.[7] This authority extends not merely to scientific evidence, but also to technical evidence, as well as "other specialized knowledge that will assist the trier of fact."[8] This discretion is reviewable only for its abuse;[9] on appeal, the trial judge's decision will be reviewed only to determine that she followed proper *Daubert* procedure.[10] So long as she has done so, her decision will not be overturned unless it is clearly erroneous.[11]

*Daubert* requires two steps. First, the trial judge must determine whether "the reasoning or methodology underlying the [expert's] testimony is scientifically valid."[12] Second, she must determine "whether the evidence or testimony assists the trier of fact in understanding the evidence or determining a fact at issue;" in other words, the testimony must "fit" the facts.[13] She may exclude evidence if she finds that there is "simply too great an analytical gap between the data and the opinion proferred."[14]

---

[5] Trans. of Pre-Trial Conf. at 55-6, dkt 97.
[6] Mt. *In Limine* to Exclude Certain Test. of Gary Hutter ("Mt to Exclude"), dkt. 78 .
[7] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also* Fed. R. Evid. 702.
[8] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see also* Fed. R. Evid. 702.
[9] *Kumho*, 526 U.S. at 158.
[10] *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012).
[11] *Id.*
[12] *Daubert*, 509 U.S. at 592-93.
[13] *Id.* at 616.
[14] *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

## II.  Discussion

Tricam's objections to portions of Mr. Hutter's testimony[15] fall into three main categories: objections to Mr. Hutter's speculations regarding safety requirements, "normal use," and the events on the day of the accident,[16] objections to Mr. Hutter's opinions and speculations regarding possible alternative designs,[17] and objections to the admission of Mr. Hutter's testing of the SSK-4T ladder in question.[18] These three broad categories are addressed in turn.

### 1. Objections to Mr. Hutter's Speculations regarding safety requirements, "normal use," and the accident.

Many of the issues raised Tricam's original motions *in limine*, which are listed in the proposed pre-trial order,[19] are not mentioned in Tricam's condensed, partial *Daubert* motion, specifically motions 1, 2, 3, 5, 6, 7, 8, and 10. Though we could find these motions to have been waived, we nonetheless address them as though they were included.

Tricam's initial motions *in limine* 1, 2, 3, 5, 6, 7, 8, 10, 14, and 32 all concern either ANSI or OSHA safety standards, what actions and assumptions would be "reasonable" or "normal" for a user or for McFarland on the day of the accident, and what actions would be required of a manufacturer or designer to ensure the safety of its products. Tricam is concerned that Mr. Hutter is not qualified to dispense opinions or speculations about what is safe and reasonable, how a typical customer would use a ladder, and what a manufacturer can do to keep its products safe. These concerns are easily dispensed. Mr. Hutter's qualifications as a safety professional are overwhelming: he is a Certified Safety Professional (CSP), a member of the

---

[15] Gary Hutter's Prelim. Report ("Hutter's Report"), dkt. 78, exh. 5.
[16] Proposed Pre-trial Order at 12-15 (mts. *in limine* 1, 2, 3, 5, 6, 7, 8, 10, 14, and 32), dkt. 73.
[17] *Id.* at 12-15 (mts. *in limine* 4, 11, 12, 13, and 14) and the Mt. to Exclude generally (Arguments II, V, VI, VII, VIII, IX and X), dkt. 78.
[18] Proposed Pre-trial Order at 15 (Mt *in limine* 31) and the Mt to Exclude at 4-7 (Arguments III and IV).
[19] Proposed Pre-Trial Order at 12-15, dkt 73.

safety committee for the Fabricators and Manufacturers Association International (FMA), the current chair of the National Safety Council's AMPS Committee, a longtime educator of safety requirements and "human factors,"[20] and he holds a Ph.D. in Environmental and Occupational Health Studies.[21] If anyone is to be expected to understand what is safe, what is required by ANSI and OSHA standards, and how a typical human interacts with his environment, it is Mr. Hutter. Furthermore, there seems to be no "analytical gap" between Mr. Hutter's foundation of knowledge and experience and his conclusions large enough to trigger the requirement to exclude. Mr. Hutter's conclusions are not far-fetched, and he consistently points to OSHA and ANSI standards, as well as a host of other generally accepted literature on health and safety standards.[22] Finally, it seems common sense that a jury, when determining whether or not a ladder was unreasonably dangerous, would wish to know recognized safety standards and typical human reactions to them. Tricam should of course bear in mind that any inconsistencies or deficiencies in Mr. Hutter's literature or process may be raised on cross-examination.[23]

### 2. Objections to Mr. Hutter's opinions and presentation of "alternative designs" for the SSK-4T.

Tricam also objects to Mr. Hutter's various opinions regarding "alternative designs" for the SSK-4T. Mr. Hutter's suggests two types of "alternative designs."

The first type are modifications of the J-hook, the portion of the ladder that connects the spreaders to the back of the ladder. The J-hook, unsurprisingly, is a piece of wire shaped like a "J," which wraps around a bar. Mr. Hutter contends that the J-hook became disconnected from

---

[20] Often called "ergonomics," human factors is the scientific discipline concerned with the understanding of interactions among humans and other elements of a system; *i.e.*, how humans typically respond and interact with such things as safety instructions or warning labels.
[21] Hutter's Report at 1.
[22] Hutter's Report at 2 (Materials Reviewed).
[23] *Lapsley*, 689 F.3d at 810.

the back during "normal use," and that this caused McFarland's accident. He argues that had the J-hook been made of "heavier" wire, or had it been made with a smaller opening, then it would not have become disconnected. Tricam objects to his suggestion, claiming that he has presented no technical drawings nor plans that show what sort of "heavier" wire or smaller gap he suggests. Tricam relies on *Bourelle v. Crown Equipment Corporation*,[24] in which the Seventh Circuit declared an expert witness's proposed additions to a forklift to be inadmissible because he did not provide technical drawings.

But this is unfounded. Mr. Hutter's suggestion of heavier wire or a smaller gap need not be excluded purely because he has not provided a technical drawing or specifications. The triers of fact do not need a precise millimeter measurement to know what Mr. Hutter means by "heavier" wire. He has also provided precise measurements for the J-hook's gap, and provided measurements of a later model of J-hook, also produced by Tricam, with a comparatively smaller and – he says – safer gap.[25] Once again, if Tricam is dissatisfied with the specificity of these suggestions, it is free to raise the issue on cross-examination.

Tricam also argues that the modified J-hook designs are inadmissible because they have not been tested.[26] But Mr. Hutter has tested the SSK-4T as it is, and found the weak points to be the ductility and strength of the wire and the width of the gap.[27] A layperson could see that the remedy for these weaknesses is to use a heavier wire or decrease the gap, but Mr. Hutter is more than a layperson. He is a registered professional engineer.[28] Mr. Hutter has arrived at his conclusions with the rigor expected of his profession, and in any case, as discussed in more detail

---

[24] 220 F.3d 532, 535-38 (7th Cir. 2000).
[25] Hutter's Report at 6.
[26] *Id*. at 3-4.
[27] *Id*. at 9.
[28] *Id.* at 1.

5

below, the failure to test is not an absolute death knoll for an expert's proposed alternate design.[29]

The second type of "alternate design" suggested by Mr. Hutter are several "spreader" bars that are currently used by Tricam in other ladder models.[30] A spreader bar is what keeps the ladder's legs apart; if a ladder is shaped like the letter "A," then the spreader is the horizontal line.[31] Tricam argues that these alternative designs should be inadmissible for several reasons.

First, Tricam argues that the alternative spreaders are not feasibly incorporated into the SSK-4T's design; either their plastic aspects could not be easily incorporated into the SSK-4T's steel frame, or they would cause the SSK-4T's profile to become too wide. It relies on *Dhillon v. Crown Controls Corporation*, which provides a number of factors that an expert should consider when opining that a design is defective and an alternative is available, including compatibility with current designs, efficiency, and cost.[32] *Dhillon* also tells us that "[i]n alternative design cases, we have consistently recognized the importance of testing the alternative design."[33] Tricam argues that Mr. Hutter has provided no evidence of why these alternate "spreaders" would be feasible to incorporate into the SSK-4T, and that Mr. Hutter has not tested the alternative designs. In other words, Tricam argues that Mr. Hutter has not considered the *Dhillon* factors at all.

But further inquiry into the *Dhillon* factors reveals them to be less stringent than Tricam would have us believe. *Winters v. Fru-Con Inc.* tells us that "[t]here could be situations where

---

[29] *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) ("We have not mandated alternative design testing as an absolute prerequisite to the admission of expert testimony because the *Daubert* inquiry is a flexible inquiry.")(internal quotations omitted).
[30] Hutter's Report at 7.
[31] *Id*. at 3.
[32] 269 F.3d 869, 870 (7th Cir. 2001).
[33] *Id.*

6

the district court determines the proposed expert's testimony regarding an alternative design is reliable despite a lack of testing of the alternative design because the expert has adhered to the 'standards of intellectual rigor that are demanded in [his or her] professional work' . . ."[34] This is one of those situations. Mr. Hutter may not have personally tested the alternative designs, but they are so widespread that he tells us that the American Ladder Institute considers the alternate spreader design to be the "traditional" step-ladder configuration.[35] As to whether or not the alternative is cost-effective, Mr. Hutter cannot know whether Tricam could economically include such spreaders in the SSK-4T, as he is not privy to Tricam's manufacture or design process. He can only make a reasonable guess that such an incorporation *would* be economical, based on the fact that such spreaders are both widely used and incorporated into other Tricam designs. Mr. Hutter cannot be expected to make a perfect analysis of the *Dhillon* factors. He is only expected to consider them, which he has done.

Second, Tricam argues that Mr. Hutter's alternative designs should be inadmissible because the issue at hand is not whether the SSK-4T could be safer, but whether it is "unreasonably dangerous" as designed and manufactured. While this is true, it is not the court's role to exclude evidence because it does not directly answer the pleadings. It is the court's role to allow expert evidence that "will help the trier of fact to understand the evidence or to determine a fact in issue."[36] Mr. Hutter's opinion regarding the alternative designs may serve that role, and it is the role of the parties to direct his testimony towards the relevant standard on cross-examination. Furthermore, the Seventh Circuit has a long tradition of allowing expert testimony

---

[34] 498 F.3d at 742 (7th Cir. 2007) (*quoting Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996)); *see also Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)); *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 901 (7th Cir. 1994); *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 n. 6 (7th Cir. 1993).
[35] Hutter's Report at 4.
[36] Fed. R. Evid. 702.

of alternate, safer designs in product liability cases.[37] There are even some states in which a safer, alternative design is *required* to show a design defect.[38] That tradition need not be overturned here.

Lastly, Tricam argues that allowing evidence of the alternative spreaders is a violation of Federal Rule of Evidence 407, which provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction."[39] The salient word here is *subsequent*; the alternative spreaders that Mr. Hutter opines upon have been in wide use long before the SSK-4T was designed, presumably even by Tricam itself. Thus, Rule 407 cannot apply.

### 3. Objections to Mr. Hutter's "hand forces" test.

The SSK-4T requires the user to press a button to "unlock" the spreader and allow the ladder to be folded up. Mr. Hutter contends in his report that he was able to deform the J-hook by using "hand forces" to close the ladder without pressing the button.[40] His "hand forces" test shows two things: one, that it is possible to force the ladder shut by hand, and two, that doing so spreads the gap in the J-hook, increasing the chances of it becoming disengaged.[41] Tricam argues that Mr. Hutter's testimony regarding this test is inadmissible for two reasons.

First, Tricam argues that Mr. Hutter has no way of knowing that the forces he applied in his test are the same as those applied by McFarland in his "normal use" of the ladder, or if

---

[37] *Lapsley*, 689 F.3d at 814-15; *Cummins*, 93 F.3d at 371; *Malen v. MTD Prods, Inc.*, 628 F.3d 296, 308 (7th Cir. 2010).
[38] *Poulter v. Cottrell, Inc.*, WL 2877606 (N.D. Ill. 2014) (applying Kentucky law); *Hathaway v. Cintas Corporate Services, Inc.*, 903 F.Supp.2d 669 (N.D. Ind. 2012) (applying Indiana law).
[39] Fed. R. Evid. 407.
[40] Hutter's Report at 9.
[41] *Id*.

"normal use" would involve applying the same or similar forces at all. Thus, Tricam concludes that Mr. Hutter's claim that his "hand forces" test is relevant or related to the facts at hand is mere *ipse dixit*.

But Mr. Hutter is not pulling this claim from thin air. In his report, he details how this release button is an unusual feature for a ladder, and he predicts that many users will not notice it and will simply force the ladder shut.[42] This prediction is based on his knowledge and experience in the field of human factors and safety. It is hard to see the "analytical gap" that allows a court to exclude testimony.

Second, Tricam argues that this "hand forces" test is inadmissible because Mr. Hutter does not provide video footage of the test, nor did he record the forces he applied to the ladder or the manner in which he applied them.[43] Tricam relies on *Zenith Electronics Corporation. v. WH-TV Broadcasting Corporation*, which tells us that in order for expert testing to be admissible, "[s]omeone else using the same data and methods must be able to replicate the result."[44] It is true that Mr. Hutter did not videotape his test, nor record the precise forces he applied to the SSK-4T. He only tells us that he applied "hand forces" to shut the ladder without pressing the release button. But this is not a complex testing of industrial machinery; this is one man testing a step-stool with his bare hands. There is a simple remedy here: if Tricam is concerned that Mr. Hutter's "hand forces" test is not replicable, then an exemplar SSK-4T ladder may be provided to Mr. Hutter during cross-examination, and he may attempt to replicate his test at trial. Regardless of whether Mr. Hutter is able to replicate the test, whatever prejudice Tricam would receive from an irreplicable test would be alleviated.

---

[42] Hutter's Report at 7.
[43] Mt. to Exclude at 4.
[44] *Zenith Elec. Corp. v. WH-TV Broad. Corp,*, 395 F.3d 416, 419 (7th Cir. 2005).

For these reasons, Tricam's motion *in limine* to exclude certain testimony of Gary Hutter is denied.

It is so ordered.

**ENTER:**
**DATED:** February 17, 2015					/s/ Susan E. Cox_____
							Susan E. Cox
							United States Magistrate Judge